**RECORD NO. 13-2212**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## CHRISTINA LYNN JACOBS,

*Plaintiff – Appellant,*

**v.**

## N.C. ADMINISTRATIVE OFFICE OF THE COURTS; JAN KENNEDY, in her official capacity as New Hanover County Clerk of Superior Court,

*Defendants – Appellees,*

and

**BRENDA TUCKER, New Hanover County Clerk of Superior Court; MELISSA GRIFFIN; DEBRA EXCELL,**
*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT WILMINGTON**

_____

## REPLY BRIEF OF APPELLANT
_____

Vanessa K. Lucas
EDELSTEIN & PAYNE
Post Office Box 28186
Raleigh, NC 27611
(919) 828-1456

Lisa Grafstein
Mercedes Restucha-Klem
DISABILITY RIGHTS
 NORTH CAROLINA
2626 Glenwood Avenue
Suite 550
Raleigh, NC 27608
(919) 856-2195

*Counsel for Appellant*                    *Counsel for Appellant*

**TABLE OF CONTENTS**

**PAGE:**

TABLE OF AUTHORITIES..........................................iii

ARGUMENT........................................................1

    I.   Disputed Issues of Fact Related to Plaintiff's
        Disability............................................2

        A.   Ms. Jacobs Has Social Anxiety Disorder..........2

        B.   Ms. Jacobs Had Social Anxiety Disorder at
             All Times Relevant to This Action...............4

        C.   Ms. Jacobs Is Substantially Limited in
             Interacting with Others.........................6

            1.   Interacting With Others is a Major Life
                 Activity...................................6

            2.   Evidence Indicates Ms. Jacobs is
                 Substantially Limited in Interacting
                 with Others................................7

    II.  Disputed Issues of Fact Regarding Ms. Tucker's
        Knowledge of Ms. Jacobs' Disability and Request
        for Accommodation....................................11

        A.   Knowledge of Disability........................11

        B.   Knowledge of Ms. Jacobs' Request for
             Accommodation..................................13

            1.   The audio recording (J.A. 827) and
                 transcript (J.A. 825-826) of the
                 meeting....................................14

            2.   Ms. Tucker's handwritten notes. J.A.
                 677........................................14

    III. Disputed Issues of Fact Exist Regarding Whether
        the Proffered Reasons for Dismissal Were
        Pretextual, and Whether Ms. Jacobs' Termination
        was on Account of Her Disability or Request for
        Accommodation.......................................15

A.    Contradictions Among Defendants' Witnesses......17

    1.    Poor Performance and Not "Getting It"......17

    2.    Alleged Outbursts and Conflict.............19

    3.    Alleged Sleeping on the Job...............20

B.    Lack of Documentation to Support Defendants' Position.......................................23

    1.    Lack of electronic evidence................23

    2.    Notes maintained regarding Ms. Jacobs' employment were devoid of discipline or the allegations of misconduct alleged by Defendants.............................23

C.    Documentation Supporting Plaintiff's Position.......................................25

CONCLUSION....................................................27

AMENDED REQUEST FOR ORAL ARGUMENT.............................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

**TABLE OF CONTENTS**

**PAGE(S):**

**CASES:**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 106 S. Ct. 2505 (1986)........................2

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
 974 F.2d 1358 (3d Cir. Pa. 1992)...........................16

*Chevron, U.S.A., Inc. v.*
*Natural Resources Defense Council, Inc.*,
 467 U.S. 837 (1984)......................................6, 7

*Haulbrook v. Michelin N. Am., Inc.*,
 252 F.3d 696 (4th Cir. 2001).............................15

*Owens v. Ford Motor Co.*,
 297 F. Supp. 2d 1099 (S.D. Ind. 2003)....................4

*Provenz v. Miller*,
 102 F.3d 1478 (9th Cir. 1996)............................3

*Schmidt v. Safeway Inc.*,
 864 F. Supp. 991, 3 AD Cas. (BNA) 1141 (D. Or. 1994)......12

*Summers v. Altarum Inst.*,
 740 F.3d 325, 2014 U.S. App. LEXIS 1252
 (4th Cir. Jan. 23, 2014)...........................6, 8, 27

**STATUTES:**

42 U.S.C. § 12101 (ADA)....................................*passim*

42 U.S.C. § 12102(4)(A).......................................7

42 U.S.C. § 12102(4)(D).......................................5

42 U.S.C. § 12102(4)(E)(i)...................................10

**REGULATIONS:**

29 C.F.R. § 1630.1(c)(4).....................................7

29 C.F.R. § 1630.2(i)........................................7

29 C.F.R. § 1630.2(i)(1)(i)..................................6

29 C.F.R. § 1630.2(j)(1)(ii)................................4, 7

29 C.F.R. § 1630.2(j)(1)(vi).................................9

29 C.F.R. § 1630.2(j)(1)(vii)...............................5

29 C.F.R. § 1630.2(j)(4)....................................9

**RULE:**

Fed. R. App. P. 702.........................................4

**OTHER:**

http://www.nlm.nih.gov/medlineplus/seasonalaffective
disorder.html (last visited Feb. 13, 2014).....................3

**ARGUMENT**

There are no significant disputes of law in this case. The parties are in agreement about the applicability of the Americans with Disabilities Act Amendments Act (ADAAA), the broad interpretation of disability under the ADAAA, and the essential elements of claims for discrimination, retaliation, and failure to accommodate. (*Cf.* Pl.'s Br. 15, 25-27, 46; Defs.' Br. 18-20, 42, 49.) The disputed issues here are factual.

Specifically, the parties have posed competing answers to questions of whether a reasonable jury could find that:

- Ms. Jacobs' social anxiety disorder is substantially limiting in a major life activity;

- Ms. Tucker was aware of Ms. Jacobs' disability and request for accommodation prior to the decision to terminate Ms. Jacobs;

- the reasons proffered for firing Ms. Jacobs were pretext; and

- Ms. Jacobs was fired as a result of her disability or request for accommodation.

(*Cf.* Pl.'s Br. 28-31, 46-48, 39-45; Defs.' Br. 20-32, 35-42.)

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) (internal citation omitted).

Defendants cite the proper summary judgment standard and argue that the District Court properly reviewed all evidence in the record and all reasonable inferences therefrom in the light most favorable to the Plaintiff without making credibility determinations. (Defs.' Br. 16.) Defendants' contentions, however, rely almost exclusively on disputed facts as they are portrayed by Defendants, and that assume the credibility of one or more of Defendants' witnesses over the credibility of Ms. Jacobs and documents that corroborate her testimony. *See, e.g.* Defs.' Br. 10, 40, 43-45, 54-56 (arguing that the decision maker lacked knowledge of disability and accommodation request, without reference to contrary testimony and documentary evidence of notice).

The standard of proof at summary judgment "does not denigrate the role of the jury [and] by no means authorizes trial on affidavits." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). The issues in this case are factual, requiring resolution by a jury.

I.    **Disputed Issues of Fact Related to Plaintiff's Disability**

A.    <u>Ms. Jacobs Has Social Anxiety Disorder</u>.

Defendants contend that Ms. Jacobs does not have social anxiety disorder, relying on Defendant's expert, Dr. George

2

Corvin. (Defs.' Br. 11-12.) Defendants acknowledge that

Plaintiff's expert, Dr. Claudia Coleman, contradicts Dr. Corvin:

> Dr. Coleman concluded Plaintiff meets the criteria to
> be currently diagnosed with Social Phobia . . . and
> Anxiety Disorder, Not Otherwise Specified due to
> Plaintiff's reports of panic attacks. She concluded
> that Plaintiff's mental disorders constitute a
> disability under the ADA. (J.A. 804-807).

(Defs.' Br. 13.)[1] Defendants did not challenge Dr. Coleman's

qualifications. Defendants contend that, nevertheless, "the mere

fact that the district court did not mention Plaintiff's expert

report in its Order, does not create a genuine issue of material

fact as to the issue of disability." (Defs.' Br. 22.) The fact

that these two experts disagree does, however, indicate that a

material question of fact is in serious dispute. "As a general

rule, summary judgment is inappropriate where an expert's

testimony supports the non-moving party's case." *Provenz v.

Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996)(internal citations

omitted).

Dr. Coleman has practiced in the field of clinical

psychology for over thirty years and has extensive experience

serving as an expert. J.A. 809-818. Dr. Coleman had access to

the same medical records as Dr. Corvin, and also conducted an

---

[1] Defendants refer to social anxiety disorder in their Brief by
the acronym "SAD." (Defs.' Br. 8.) SAD is an acronym more
commonly used for seasonal affective disorder, not social
anxiety disorder.
http://www.nlm.nih.gov/medlineplus/seasonalaffectivedisorder.htm
l (last visited Feb. 13, 2014).

examination of Ms. Jacobs. She followed the DSM-IV definition of social anxiety disorder, which is the medically-appropriate standard. J.A. 806. As noted by *amici*, a diagnosis of social anxiety disorder means, by medical definition, that the disorder significantly interferes with "occupational or academic functioning, or social activities or relationships," and therefore more than meets the ADAAA's more inclusive definition of substantial impairment. (Br. of *Amici* 11.) *See also*, 29 C.F.R. § 1630.2(j)(1)(ii)(establishing that the "substantially" limiting standard is a lower one than "significantly").

The decision of which expert to credit may only be made by a jury. *See Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1110 (S.D. Ind. 2003)("The court's role on summary judgment is not to choose the better expert but to ensure that all experts satisfy the requirements of Rule 702"). In the absence of a compelling reason to exclude Dr. Coleman's testimony – and Defendants have offered none – it was error for the District Court to rely on Dr. Corvin's opinion to the exclusion of Dr. Coleman's opinion.

B.   Ms. Jacobs Had Social Anxiety Disorder at All Times Relevant to This Action.

Defendants next contend that Ms. Jacobs did not have social anxiety disorder while she was at the Clerk's office. (Defs.' Br. 20.) Ms. Jacobs was diagnosed while in college, although her medical records from her childhood also contained indicia of the

4

disorder. J.A. 803, 1071-1243, 1328-1335. She experienced symptoms of the disorder while at the Clerk's office, which prompted her conversation with Ms. Excell in May 2009. J.A. 202, 820, 851-852, 873-875, 893-894.  Ms. Jacobs sought medical treatment at that time. J.A. 876, 884-886, 1072-1073. At the time of her assessment by Dr. Coleman, Dr. Coleman concluded that Ms. Jacobs has experienced symptoms of social anxiety disorder for years. J.A. 807. Thus, at all relevant times, Ms. Jacobs has had social anxiety disorder.

Defendants' approach suggests that Ms. Jacobs does not have a disability because she does not exhibit symptoms constantly. Certainly, the testimony is that her symptoms, as with many disorders, are more significant at times. J.A. 807-808, 903, 916, 918, 920. This argument, however, ignores the legislative mandate that episodic conditions are covered under the ADA if the impairment substantially limits a major life activity when active. 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii). *See also*, Br. of *Amici* 17-19.

There is significant evidence in the record that Ms. Jacobs not only had social anxiety disorder during her employment (and before and after her employment), but also that she expressed, and Defendants took note, that her symptoms had become acute at times during her employment. J.A. 202, 798, 820, 823, 851-852, 873-875, 893-894. Thus, Defendants' contention to the contrary

5

is contradicted by record evidence, making summary judgment inappropriate.

C.    Ms. Jacobs Is Substantially Limited in Interacting with Others.

1.    *Interacting With Others is a Major Life Activity.*

Defendants contend that interacting with others is not a major life activity because: it is listed as a major life activity in the regulations and not in the statute; pre-ADAAA cases in other Circuits declined to recognize it as a major life activity; and the Fourth Circuit (before the ADAAA and its implementing regulations) expressed doubts about whether interacting with others is a major life activity. (Defs.' Br. 25, 27.) The regulations, which have the force of law, are explicit that interacting with others is a major life activity. 29 C.F.R. § 1630.2(i)(1)(i). Moreover, pre-ADAAA cases cannot be relied on in interpreting the question of disability under the ADAAA, particularly where the question has been squarely addressed by the statute or regulations. *Summers v. Altarum Inst.*, 740 F.3d 325, 2014 U.S. App. LEXIS 1252 at 15-18 (4th Cir. Jan. 23, 2014) (giving *Chevron* deference to Equal Employment Opportunity Commission (EEOC) regulations on definition of disability and reversing dismissal of claims when Defendant "principally relies on pre-ADAAA cases that . . . the amended Act abrogated.")

One of the key purposes of the ADAAA was to reject the restrictive interpretation of what constitutes a major life activity, and to empower the EEOC to delineate additional life activities that are deemed major. 29 C.F.R. § 1630.2(i). Where, as here, the statute is silent on a matter, the EEOC's reasonable interpretation of the statute will control. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984)(holding that courts defer to the agency's "permissible construction of the statute").

2.    *Evidence Indicates Ms. Jacobs is Substantially Limited in Interacting with Others.*

Defendants' contention that Ms. Jacobs' anxiety disorder does not substantially limit her is not supported by any substantive argument; Defendants simply recite the standard articulated in the ADAAA. (Defs.' Br. 22-24.) Specifically, Defendants acknowledge that the term "disability" must be construed broadly in favor of coverage, that the determination of disability does not demand extensive analysis, is not meant to be a demanding standard, and that it is no longer required that an impairment prevent or severely restrict an activity to constitute a disability. (Defs.' Br. 23-24.) 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.1(c)(4); 29 C.F.R. § 1630.2(j)(1)(ii).

The Fourth Circuit recently made the same observations. In *Summers v. Altarum Inst.*, the Court reversed a lower court decision finding that a leg injury causing a severe temporary impairment was not a disability under the ADAAA. 740 F.3d 325, 2014 U.S. App. LEXIS 1252 (4th Cir. Jan. 23, 2014). "Congress enacted the ADAAA to correct what it perceived as the Supreme Court's overly restrictive definition of ['substantial']. And Congress expressly directed courts to construe the amended statute as broadly as possible." 2014 U.S. App. LEXIS 1252 at 16.

Here, the experts disagree and Dr. Coleman's description of Ms. Jacobs' limitations would support a jury determination that Ms. Jacobs is substantially limited in the major life activity of interacting with others. J.A. 806. Dr. Coleman reports that Ms. Jacobs has a "[m]arked and persistent fear of social performance situations," "[a]nxiety characteristic of panic attack provoked by exposure to many social situations," "[a]voidance of or endurance of a wide range of social situations with anxiety," and "[s]ocial avoidance, anticipation or distress that interferes significantly with social and occupational functioning." J.A. 806.

Defendants acknowledge that Dr. Coleman's findings are that Ms. Jacobs experiences "extreme stress and panic attacks (J.A. 820), intense fear of speaking to people outside her family

(J.A. 805), overwhelming anxiety that leads to avoidance (J.A. 805), and intense anxiety when asked questions she is unable to answer (J.A. 807)." (Defs.' Br. 25.) Yet, Defendants contend that Ms. Jacobs was social on the job and was on Facebook and, therefore, was not substantially limited in interacting with others. (Defs.' Br. 26-27.) This argument relies on disputed facts and disregards the nature of social anxiety disorder. Ms. Jacobs' interactions at the office were limited to polite conversation with those that she ran into, rather than Ms. Jacobs seeking to be social with co-workers. J.A. 537-538. Ms. Tucker claims that Ms. Jacobs interacted with her socially. (Defs.' Br. 26.) Ms. Jacobs testified that she did not speak to Ms. Tucker much or see her a lot and did not stop by her office as Ms. Tucker contends. J.A. 895. Though characterized by Defendants as "socializing," (Defs.' Br. 26), Ms. Jacobs had lunch with co-workers only once and participated in only one activity with co-workers outside of work during her seven months of employment at the Clerk's office. J.A. 539-540.

Defendants do not address Ms. Jacobs' limitations in interacting with others with reference to the statutory standards of the condition, manner and duration in which she performs the activity or how she has learned behaviors to mitigate the effects of her disorder. 29 C.F.R. § 1630.2(j)(1)(vi), 29 C.F.R. § 1630.2(j)(4).

9

Learned behaviors are considered a type of mitigating measure and the ameliorative effects of learned behaviors must be disregarded when making a determination of whether an impairment substantially limits a major life activity. 42 U.S.C. § 12102(4)(E)(i). After conducting an in-person examination of Ms. Jacobs, Dr. Coleman was able to determine that while Ms. Jacobs did interact with others via Facebook and at work, she was "*significantly* hampered by clinical anxiety and panic in many direct contact situations." J.A. 800 (emphasis added). Dr. Coleman also addresses Ms. Jacobs' use of Facebook as a "form of desensitization by repeated exposure," which "is the hallmark of one of the first steps of cognitive-behavior treatment for phobia." *Id.* In other words, Ms. Jacobs tried to interact with others and to address her anxiety, but was significantly impaired in doing so by her anxiety and panic reactions. *Id.*

Defendants are free to argue to a jury that Ms. Jacobs does not have social anxiety disorder, or that if she does it is not substantially limiting in a major life activity. However, a jury could very reasonably conclude, based on evidence presented by Plaintiff, that Ms. Jacobs has long had social anxiety disorder, and that it substantially limits her in interacting with others. Consequently, the District Court erred in dismissing Ms. Jacobs' claims.

## II.  Disputed Issues of Fact Regarding Ms. Tucker's Knowledge of Ms. Jacobs' Disability and Request for Accommodation

Defendants' ground their arguments as to Ms. Jacobs' retaliation and discrimination claims on the premise that Ms. Tucker did not know about Ms. Jacobs' disability or her request for accommodation. (Defs.' Br. 54-55.) These are contested issues of fact. Specifically, the only documentary evidence on these points unequivocally supports the conclusion that Ms. Tucker _was_ aware of Ms. Jacobs' disability and her request for accommodation before terminating Ms. Jacobs' employment. The documents and other evidence would support a jury determination that Ms. Tucker's denials are not credible.

### A.   Knowledge of Disability

While Defendants contend that "Plaintiff did not tell [Ms.] Excell, or anyone, that she had a disability" (Defs.' Br. 7) in May 2009, the documentary evidence shows that Ms. Tucker wrote down that Ms. Jacobs had an "anxiety disorder"; this note was based on Ms. Excell's report of her conversation with Ms. Jacobs. The note also reports other aspects of the conversation, including "too stressful," "dreading coming to work," "nerve issue," and "might have to go back to Dr. worried may be a problem and do not want to reflect badly."  J.A. 823, 997.

It was not necessary for Ms. Jacobs to specifically state that her disorder is a "disability" any more than it would be

11

required for an individual who is deaf to assert not only that
she is deaf but also that she has "a disability."
*See Schmidt v. Safeway Inc*., 864 F. Supp. 991, 997, 3 AD Cas.
(BNA) 1141, 1146-47 (D. Or. 1994) ("The employer need only know
the underlying facts, not the legal significance of those facts.
Accordingly, whether defendant knew alcohol abuse  is considered
a 'disability' is of no consequence here").

To the extent that Defendants are arguing that Ms. Jacobs
was required to do so, that argument is contrary to law. *Id.* To
the extent that Defendants are implying that Ms. Tucker was
unaware of Ms. Jacobs' disorder, that argument is flatly
contradicted by Ms. Tucker's own handwritten notes.

Ms. Tucker has been consistent in denying that she was
aware of Ms. Jacobs' disability. She wrote to the EEOC that she
"had no knowledge of any disability or work impairment until
after the decision to terminate" and that "Ms. Jacobs had never
mentioned or even alluded to the fact that she had a disability
or any medical condition." J.A. 687 (emphasis added). She made
the same assertion, under oath, at her deposition in this case.
J.A. 427. However, she does not deny that she wrote the note in
Ms. Jacobs' file that refers to Ms. Jacobs' anxiety disorder.
J.A. 823, 997.

Likewise, Ms. Tucker's note could not have included the
information about Ms. Jacobs' anxiety disorder unless that

information was reported to her by Ms. Jacobs' supervisor, Ms. Excell, as Ms. Tucker testified. J.A. 997. Finally, Ms. Jacobs herself testified that she informed Ms. Excell about her disability. J.A. 820, 851-852, 873-875, 893-894.

Ms. Tucker was aware of Ms. Jacobs' disability. Ms. Jacobs, Ms. Excell and Ms. Tucker testified that the information was disclosed in May 2009. Ms. Tucker's note memorialized that fact. A jury could determine that Ms. Tucker's denials on this point are not credible.

B.    Knowledge of Ms. Jacobs' Request for Accommodation

Defendants characterize as "uncontradicted" Ms. Tucker's assertion that she did not know about Ms. Jacobs' request for accommodation prior to the firing. (Defs.' Br. 36.) Ms. Tucker's assertion is contradicted by documentary evidence and testimony.

Defendants hinge their argument regarding Ms. Jacobs' claims, and particularly her retaliation claim, on the contention that Ms. Tucker did not read or know about Ms. Jacobs' accommodation request prior to the decision to terminate Ms. Jacobs. (Defs.' Br. 48, 55-56.) There are significant factual bases upon which a jury could reject Ms. Tucker's assertion. These include:

13

      1.   *The audio recording (J.A. 827) and transcript (J.A. 825-826) of the meeting.*

When Ms. Jacobs referenced the accommodation email she had sent, Ms. Tucker's response indicates that she knew the email to which Ms. Jacobs was referring. J.A. 825-827.

Contrary to Ms. Tucker's testimony (J.A. 1001), the audio and transcript do not reflect Ms. Tucker printing out the email during the meeting, or even pausing to read or search for an email. J.A. 825-827.

      2.   *Ms. Tucker's handwritten notes. J.A. 677.*

Ms. Jacobs testified that her accommodation request, with handwritten notes on it, was sitting on Ms. Tucker's desk when Ms. Jacobs arrived at the September 29, 2009 meeting at which she was fired. J.A. 824, 912. The question of whether a jury believes Ms. Tucker or Ms. Jacobs on this point is one of credibility.

The notes contain information that would have been obtained in consultation with others. The notes reference information from Ms. Excell, and contain a list of dates Ms. Jacobs was absent while Ms. Tucker was away, which would have been supplied by Ms. Kennedy or one of the other supervisors.

Finally, the notes relate to the accommodation request itself. Defendants have offered no explanation as to why Ms.

Tucker would have made notes related to the accommodation request *after* firing Ms. Jacobs.

A jury could determine that Ms. Tucker's denials on this point are not credible. Such a conclusion would support a jury determination that Ms. Jacobs' termination was caused by her request for accommodation. *Haulbrook v. Michelin N. Am., Inc.,* 252 F.3d 696, 706 (4th Cir. 2001) (holding that a three week period between a request for an accommodation and termination constitutes *prime facie* causation).

Because there are sufficient bases for concluding that Ms. Tucker was aware of Ms. Jacobs' disability and request for accommodation, a jury could reasonably conclude that Ms. Tucker fired Ms. Jacobs with full knowledge of both. Moreover, as detailed in the next section, there is a sufficient basis for a jury to decline to credit Ms. Tucker's testimony regarding the reason for the decision to terminate.

## III. Disputed Issues of Fact Exist Regarding Whether the Proffered Reasons for Dismissal Were Pretextual, and Whether Ms. Jacobs' Termination was on Account of Her Disability or Request for Accommodation

As detailed in Plaintiffs' opening Brief, Ms. Jacobs is an "otherwise qualified" individual. (Pl.'s Br. 31-33.) Plaintiff offered significant direct evidence that the timing of Ms. Jacobs' dismissal shortly after her request for accommodation, and circumstances of her dismissal, in the context of a

discussion about her accommodation request, create a strong inference of retaliation and discrimination. (Pl.'s Br. 15-25, 33-39.) Finally, Plaintiff's opening Brief detailed the changing rationales given for Ms. Jacobs' termination, which raise a strong inference of retaliation and discrimination. (Pl.'s Br. 40-45.) Therefore, Plaintiff will not revisit these issues here, but focus on the alleged job performance issues that Defendants have raised in their Brief.

Defendants portray the allegation of performance issues in the light most favorable to Defendants and ignore contradictions and inconsistencies in testimony by Defendants' witnesses and written documentation, as well as Ms. Jacobs' direct and consistent testimony.

> [T]he opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent.

*Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. Pa. 1992).

Based on the evidence of pretext noted in Plaintiff's opening Brief, (Pl.'s Br. 40-45), contradictions among Defendants' witnesses with regard to key areas, and the lack of documentation that would be expected under the circumstances, a reasonable jury could conclude both that the Defendants'

proffered reasons for dismissal were pretextual and that Ms.
Jacobs was satisfactorily performing the essential functions of
her job, but was fired because of her disability or in
retaliation for requesting an accommodation.

    A.    <u>Contradictions Among Defendants' Witnesses</u>

        1.   *Poor Performance and Not "Getting It"*

Ashley English trained Ms. Jacobs and thought that Ms.
Jacobs was doing fine when she trained her. J.A. 839.
Defendants' witnesses indicated that Ashley English was the
source of negative information – supporting the decision to
terminate - about Ms. Jacobs' work performance and alleged
conflicts. J.A. 857, 965-966. Yet, Ms. English testified that
she never had any discussions with supervisors, co-workers or
Ms. Tucker about Ms. Jacobs' job performance. J.A. 841-842.

    Q.   Did you ever hear any complaints about how she
        [Ms. Jacobs] was doing her job?
    A.   I never – there was never discussions about her.
    Q.   You never had any discussions with anybody about
        Ms. Jacobs or her performance?
    A.   No.
    Q.   So, you never spoke with Ms. Kennedy about her
        job performance?
    A.   No . . .
    Q.   Okay. Did you ever talk to Ms. Griffin about –
    A.   (interposing) I never talked –
    Q.   - Christina Jacobs?
    A.   - to anybody.
    Q.   Did you ever talk to Ms. Debra Excell about her
        job performance or Ms. Alice Radewicz?
    A.   No.
    Q.   Or Ms. Tucker?
    A.   No.

> Q.   Okay. Did you ever talk to your co-workers or
>      gossip about her job performance?
> A.   No.

J.A. 841-842.

Defendants next contend that Ms. Jacobs' second trainer, Ashley Stewart told Ms. Kennedy that Ms. Jacobs wasn't "getting it." (Defs.' Br. 6.) However, Ms. Kennedy says that this occurred "a week or two" into Ms. Jacobs' training. J.A. 306. Ms. Jacobs worked at the front counter for months after her brief training period. The fact that Ms. Jacobs continued to be assigned to the front counter and had no write-ups related to her performance there suggest that Defendants did not rely on Ms. Stewart's opinion from months before in deciding whether to terminate.

Likewise, Ms. Tucker testified that she relied on Ms. Griffin's opinion of Ms. Jacobs' performance in terminating Ms. Jacobs. J.A. 1000-1001. Ms. Griffin, however, testified that she did not have day-to-day supervision of Ms. Jacobs or first-hand knowledge regarding performance issues and did not witness the alleged performance issues. J.A. 926, 931-934.

Defendants' contention that Ms. Jacobs' microfilming speed was a significant performance issue is not supported by the testimony of Defendants' witnesses. Ms. Tucker could not recall who told her that microfilming was taking Ms. Jacobs too long. J.A. 368-369. Ms. Kennedy testified that she did not witness Ms.

18

Jacobs' microfilming work. J.A. 289. Defendants cite to the
testimony of a co-worker who references Ms. Jacobs' microfilming
speed, but the co-worker's affidavit – which could presumably
have contained as much detail as was available to Defendants –
did not indicate that he witnessed this himself, or that he ever
reported it to management at any time, let alone prior to the
decision to terminate. J.A. 258. Again, here, Defendants have
made broad arguments about a purported performance issue, cannot
identify the source of the alleged information, and rely instead
on repetition.

2.   *Alleged Outbursts and Conflict*

Defendants allege that Ms. Jacobs had conflict with co-
workers, including her trainer. (Defs.' Br. 5-6.) The trainer,
Ashley English, denies this:

> Q.   Was there a time when Ms. Jacobs confronted you
>      about the way you were training her?
> A.   No.
> Q.   Was there a time when Ms. Jacobs raised her voice
>      at you?
> A.   No, not that I remember.
> Q.   Yelled at you? Was there an outburst in the
>      office?
> A.   I don't – I don't remember.
> Q.   Do you know anybody that would remember?
> A.   No, not really.

J.A. 843. Ms. Griffin never observed outbursts. J.A. 926.
Defendants have identified no one with first hand knowledge.

Defendants' argument is devoid of evidence of any
individuals who actually witnesses these alleged behaviors, and

the argument is directly contradicted by the primary individual,
Ashley English, whom Defendants contend was involved. (Defs.'
Br. 5.)

   3.   *Alleged Sleeping on the Job*

   Ms. Griffin never observed Ms. Jacobs sleeping. J.A. 926.
However, in arguing that Ms. Jacobs slept at work, Defendants
rely on one of the Defendants' witnesses who claims that she saw
Ms. Jacobs sleeping when Ms. Griffin was also present and tried
to wake Ms. Jacobs. J.A. 840. Thus, Defendants' contention is
contradicted by Defendants' own witness.

   Another individual Defendants have identified as seeing Ms.
Jacobs asleep was Ms. Radewicz, Ms. Tucker's assistant. Ms.
Tucker testified that when she went on vacation in September
2009, she told Ms. Radewicz "not to contact me unless it's an
emergency." J.A. 388. Yet, Ms. Tucker testified that Ms.
Radewicz called her on her vacation to tell her that Ms. Jacobs
was sleeping at work. J.A. 388-389. Ms. Tucker also testified
that this was the only occasion on which Ms. Radewicz contacted
her during her vacation. J.A. 389. Moreover, Ms. Tucker admits
that she does not know – and presumably did not know at the time
of termination - whether Ms. Jacobs was on a break or not when
she was allegedly sleeping. *Id.*

On the morning of Ms. Radewicz's deposition, Ms. Tucker and Ms. Radewicz conferred about the details of this conversation. J.A. 968.

Thus, to credit Ms. Tucker's testimony, a fact finder would have to believe that the single most critical emergency that occurred at a Superior Court Clerk's office during a three week period was a deputy clerk being asleep at work at a time when she may or may not have been on a break. The fact finder would also have to accept that Ms. Tucker and Ms. Radewicz discussing this detail on the morning of Ms. Radewicz's deposition did not affect Ms. Radewicz's testimony.

Defendants now contend that Ms. Radewicz's call to Ms. Tucker regarding Ms. Jacobs allegedly sleeping was the "last straw" and the "catalyst" for the termination. (Defs.' Br. 40.) Yet, Ms. Tucker had several opportunities to raise this critical issue prior to the litigation in this case and failed to do so. First, she did not mention it to Ms. Jacobs at the time of termination. J.A. 1001. Next, she made no reference to it in her letter to the Administrative Office of the Courts explaining the termination. J.A. 689-691. She wrote a five (5) page letter to the EEOC in response to the Charge of Discrimination filed by Ms. Jacobs and made no reference whatsoever to sleeping. J.A. 684-688.

21

Defendants do not explain why Ms. Tucker's alleged call with Ms. Radewicz was not documented, why no other evidence of it, such as phone records, exists, and why Ms. Tucker did not even note it as a reason for termination on the several occasions when she had a full opportunity to explain the termination.

Ms. Jacobs testified that she did not sleep at work. J.A. 569-570. Defendants rely on testimony that is contradictory, at best. At worst, there is evidence that it is the product of an intentional effort to create a pretextual reason that Ms. Tucker would have made the decision to terminate prior to returning to the office on September 29, 2009, before reading Ms. Jacobs' accommodation email. There are sufficient contradictions in Defendants' witnesses' testimony regarding Ms. Jacobs' performance and alleged conduct for a jury to credit Ms. Jacobs' testimony and not accept Defendants' characterizations of the evidence.

In light of the *post hoc* nature of these allegations and the lack of documentary evidence related to any alleged performance or conduct issues, there is ample basis for a jury to reject the conclusion that Ms. Jacobs was fired based on the performance issues asserted by Defendants.

B.    Lack of Documentation to Support Defendants' Position

1.    *Lack of electronic evidence*

Defendants produced no email communication between any supervisor – or anyone – related to the alleged problems with Ms. Jacobs' performance or alleged conflicts with others in the office.

Defendants produced no phone records to verify that Ms. Radewicz called Ms. Tucker to talk about Ms. Jacobs' purportedly sleeping on the job.

Defendants could have produced electronic evidence regarding when Ms. Jacobs' accommodation request email was read and printed. This is the proverbial dog that did not bark; if Defendants were able to produce conclusive evidence of the timing of when the email was read and printed, they would have done so, but have not.

2.    *Notes maintained regarding Ms. Jacobs' employment were devoid of discipline or the allegations of misconduct alleged by Defendants*

Ms. Jacobs worked at the front counter serving customers for nearly seven months. Her personnel file does not reflect the performance issues raised by Defendants. Defendants argue that the lack of documentation is because employees were not written up. J.A. 419. Regardless of whether there were formal write-ups, Defendants documented various aspects of Ms. Jacobs' employment, but nothing related to the bases offered for her termination.

23

Ms. Tucker wrote the note on May 5, 2009 describing Ms. Jacobs' disability and Ms. Jacobs' related concerns, and had Ms. Radewicz put it in Ms. Jacobs' personnel file.

Further, Ms. Tucker testified that she wrote notes on Ms. Jacobs' email requesting an accommodation <u>so that she could explain the termination at some point in time</u>. J.A. 1013. She testified that she wrote the notes "[b]ecause I thought at some point in time, if I needed to explain why I had terminated her." *Id.* These notes were placed in Ms. Jacobs' file. These notes do not contain reference to poor performance, sleeping on the job, or any of the reasons that Defendants have since given for Ms. Jacobs' termination. J.A. 677.

Ms. Kennedy had notes about Ms. Jacobs in her office. J.A. 951-952. A note in May 2009 refers to explaining search warrants to Ms. Jacobs. J.A. 608. A note from September 3, 2009 refers to Ms. Jacobs and Ms. Kennedy discussing probation violations and Ms. Kennedy's email concerning the same. J.A. 610. There are no additional notes until after Ms. Jacobs requested an accommodation. Then, on September 10, 2009, Ms. Kennedy noted talking with Ms. Jacobs over requesting leave. J.A. 609. The final note, dated September 29, 2009, followed the meeting where Ms. Jacobs was terminated. J.A. 608-612. Ms. Kennedy did not have any notes about Ms. Jacobs having outbursts, sleeping,

receiving counseling over asking questions, causing dissension, lying, or being argumentative. *Id.*

Thus, although Defendants dismiss the lack of documentation of performance problems as being a result of an office policy that does not include documenting performance, the record contains ample examples of Defendants making notes regarding Ms. Jacobs for inclusion in her file. The fact that these notes do not reflect the performance and behavior issues Defendants cite for Ms. Jacobs' termination would support a conclusion that Ms. Jacobs' performance and conduct did not warrant documentation or discipline prior to her request for accommodation.

C.   Documentation Supporting Plaintiff's Position

There is a recording and a transcript of Ms. Jacobs' termination meeting. J.A. 825-827. These are devoid of references to various rationales given for Ms. Jacobs' termination. *Id.* Moreover, the transcript and recording directly contradict Ms. Tucker on the issue of whether she had read Ms. Jacobs' request for accommodation prior to terminating her employment. Ms. Tucker testified that when Ms. Jacobs asked about the email she had sent, she responded "What email?" J.A. 393. This question does not appear on the transcript or in the recording. J.A. 825-827. Ms. Tucker further testified:

> And she said, 'The email that I sent you' – I think
> she said 'I sent you an email while you were out.' And
> I said, 'Christina, I haven't read my email.' And I

25

>pulled the email, I read it, looked back at Christina;
>and said 'No, Christina, it doesn't have anything to
>do with your email.'

J.A. 393. This lengthy dialogue is not on the recording or in the transcript. J.A. 825-827. Nor is there the significant pause that would have been occasioned by Ms. Tucker searching for or printing the email. *Id.*

As detailed in Plaintiff's opening Brief, the notes Ms. Tucker made on the email likewise indicate that they were written prior to the termination, and not after. (Pl.'s Br. 35-38.) This is consistent with Ms. Jacobs' testimony that she saw the email, with Ms. Tucker's notes on it, on Ms. Tucker's desk when she arrived for the meeting. J.A. 912.

The documentary evidence in this case – the documents that exist, and the documents that don't exist – firmly support Ms. Jacobs' contentions and contradict the arguments made by Defendants with regard to the evidence of pretext.

Summary judgment was improperly granted in this case where there is significant evidence that Ms. Jacobs' termination was related to her disability and request for accommodation, and where there is ample evidence that the reasons given by Defendants for the termination were pretext.

**CONCLUSION**

Because a jury could determine that Ms. Jacobs has a disability, that Ms. Tucker was aware of Ms. Jacobs' disability and request for accommodation, that the reasons given by Defendants for Ms. Jacobs' termination were pretextual, and that Ms. Jacobs' termination was the result of her disability and request for an accommodation, summary judgment was improper.

Plaintiff respectfully contends that the judgment of the District Court should be reversed and this matter remanded for trial.

**AMENDED REQUEST FOR ORAL ARGUMENT**

After Plaintiff's request for Oral Argument in her opening brief, the Court decided *Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 2014 U.S. App. LEXIS 1252 (4th Cir. Jan. 23, 2014). *Summers* addressed the issue of disability under the ADAAA in the context of a temporary impairment.

Plaintiff respectfully submits that oral argument is still warranted in this matter because the Court has not, to counsel's knowledge, issued an opinion with regard to non-temporary impairments, or in the context of mental health or other invisible impairments under the ADAAA. As noted in Plaintiff's original request for oral argument, these matters are significant to the parties in this case as well as other employers and employees.

27

/s/  Vanessa K. Lucas
Vanessa K. Lucas
EDELSTEIN & PAYNE
Post Office Box 28186
Raleigh, NC  27611
(919) 828-1456

Lisa Grafstein
Mercedes Restucha-Klem
DISABILITY RIGHTS
    NORTH CAROLINA
2626 Glenwood Avenue
Suite 550
Raleigh, NC  27608
(919) 856-2195

*Counsel for Appellant*

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed.
    R. App. P. 32(a)(7)(B) because:

        this brief contains 5,650 words, excluding the parts
        of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed.
    R. App. P. 32(a)(5) and the type style requirements of Fed.
    R. App. P. 32(a)(6) because:

        this brief has been prepared in a mono-spaced typeface
        using Microsoft Word in 12 point Courier New.


                              /s/  Vanessa K. Lucas
                              Vanessa K. Lucas

                              *Counsel for Appellant*


Dated:  February 24, 2014

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on February 24, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Kathryn Hicks Shields
Grady L. Balentine, Jr.
NORTH CAROLINA
    DEPARTMENT OF JUSTICE
114 West Edenton Street
P. O. Box 629
Raleigh, NC 27602
(919) 716-6879

*Counsel for Appellees*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219